NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0645n.06

No. 08-6212

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Sep 17, 2009**

LEONARD GREEN, Clerk

SAMUEL K. JONES, SR.,

    *Plaintiff-Appellant*,

v.

MEMPHIS LIGHT, GAS, AND WATER
DIVISION,

    *Defendant-Appellee*.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

**O P I N I O N**

BEFORE:     NORRIS and COLE, Circuit Judges; ADAMS, District Judge.[*]

**COLE, Circuit Judge.** Samuel K. Jones, Sr. brought this suit against Memphis Light, Gas,

and Water Division ("MLGW") for failure to promote him to two positions due to his race and age

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Tennessee

Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq. ("THRA"). The district court granted

summary judgment for MLGW. For the following reasons, we **AFFIRM**.

**I. BACKGROUND**

**A.**     **Jones's work history and qualifications**

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

1

Jones is an African-American man who works for MLGW as a welder and crew leader in the Industrial Gas department. He was born in 1947, and at the time he applied for the positions at issue, he was fifty-seven years old. Jones has a high school diploma and certificates from completing several classes at trade schools. He has been continuously employed by MLGW for approximately thirty-two years, since 1977. Jones had several negative performance incidents early in his career at MLGW. In 1982, he was removed from a Maintenance Machinist apprenticeship program because he "require[d] direct supervision for practically every assignment; d[id] not have the ability to apply basic principles of machine work; [required] excessive time to complete a job; ma[de] errors which result[ed] in waste of material and labor costs; and [demonstrated an] inability to retain standard operating procedures and practices." (R. 36-8 Ex. 7.[1]) In 1985, Jones failed multiple other exams in different types of welding and was removed from an apprenticeship as a Fabricator Welder.

Otherwise, Jones has progressed within the ranks at MLGW without any negative employment events. In 1989, he was promoted from "meter installer" to "welder installer" via a "line-of-progression" promotion, for which he became eligible by passing a welding certification test. Since approximately 1998, he has been employed in the Commercial (also called "Industrial") department of the larger Gas Operation department. In approximately 2000, Jones attained journeyman status in gas operations by undergoing training outside of MLGW. In September 2003, Jones became a "crew leader" in the Industrial Gas department. Prior to applying for the positions at issue, he successfully completed a training program through MLGW's "Assessment Center,"

---

[1]Citations to "R__" refer to the district court docket sheet, to which the parties refer in lieu of a record on appeal or joint appendix.

which provides courses to prepare employees for supervisory positions. Jones has also worked "out of class" as a foreman (*i.e.* he temporarily performed foreman's duties without being promoted to that position).

**B.      MLGW's promotion procedure**

When MLGW has an open position, it posts an internal notice listing the position and the required qualifications, and MLGW employees may apply for the position by submitting bids to the human resources ("HR") department. When the bid-period closes, an HR representative reviews the bids and selects candidates to be interviewed. The HR representative ensures that only applicants who meet the minimum qualifications are interviewed, and if the applicant pool contains many who meet the minimum qualifications, the HR representative may further narrow the pool to obtain a group of the best qualified candidates. After the interviewees are selected, they are interviewed by a "hiring manager" who has the authority to make the hiring decision. The hiring manager is only informed of those candidates who are selected as interviewees, not all candidates who applied.

**C.      Supervisor, Meter Installation**

In 2004, Jones submitted a bid for the position of Supervisor, Meter Installation, a position within the Gas Fitters department. According to the job posting, the job duties included training, directing, and supervising employees in the installation and maintenance of domestic and commercial gas meters, inspecting customers' piping, gas equipment, and buildings for compliance with various codes, and coordinating with other departments and outside agencies. The posting listed the qualifications for the job as:

-        "4-6   years   journeyman   level   experience   in   the   installation/maintenance of

domestic/commercial gas meters/metering equipment."

- "[m]ust successfully complete Supervisor Assessment Center."

- a driver's license.

- drug screening with negative results.

- a high school diploma or GED.

(R. 39-13 Ex. 11.) A separate document in the record provides a fuller description of the job, listing such responsibilities as: handling discipline, promotions, transfers, grievances, and other managerial functions; scheduling the work of subordinates; recommending use of new material or equipment and revisions to MLGW's equipment standards; preparing and verifying budgetary, inventory, performance appraisal, and other types of reports; being responsible for safe work practices; and staying abreast of MLGW policies and developments in the field.

Nine MLGW employees applied for the Supervisor position; seven were Caucasian and two—Jones and Rickey Lewis—were African-American. The HR representative charged with selecting interviewees out of this group was an African-American woman named Adrianne Vinson. She selected three interviewees, all of whom were white: Joseph Noel, Keith Ubel, and Robert Turner. She had not met Jones at that time, and she stated in an affidavit that Jones's race and age were not a factor in her decision. She stated that she chose the three interviewees because they were "the most qualified for the position, based upon their education and experience." (R. 36-4 ¶ 6.)

The interviewee who was eventually chosen for the job, Robert Turner, was fifty-five at the time—about two years younger than Jones. Turner began working at MLGW in 1968 and has worked in the Gas Fitters department since 1971. In 1998, he was promoted to foreman in the Gas

Fitters department. At the time he applied for the Supervisor position, Turner was serving out of class as the Supervisor. The hiring manager who made the decision to promote Turner was Leonard Phillips, the manager of Gas Operations and the person to whom Turner would be reporting. An internal memorandum memorializing the decision, apparently reflecting Phillips's reasons for choosing Turner, notes that Turner was the most experienced candidate, having "performed successfully as a leader in [the] area [for the] past 6 years." (R. 36-7 Ex. 7.)

**D.      Foreman, Gas Fitters**

After Turner was promoted to Supervisor, Meter Installation, his prior position of foreman in the Gas Fitters department became available. Jones applied, but again he was not selected for an interview. The description of the foreman position is nearly identical to that of the Supervisor, Meter Installation, position, the main difference being that the Supervisor has authority to select, transfer, and promote employees. The qualifications for the foreman position were:

- "2 - 4 years journeyman level experience *as a Gas Fitter*" (emphasis added).

- completion of Assessment Center Exercises, Level II.

- familiarity with piping code requirements.

- ability to manage, organize, and communicate effectively.

- a high school diploma or GED.

- a driver's license.

(R. 39-6.)

Seven employees applied for the foreman position; four were Caucasian and three—Jones, Lewis, and Lawrence Davis—were African-American. As with the Superintendent position, Vinson

selected the applicants to receive interviews. She selected Rodger Joyner (42 years old, Caucasian), Aubrey King (40 years old, Caucasian), and Davis (73 years old, African-American). Vinson stated in a declaration that she based this decision on the education and experience of the applicants. She noted in the declaration that all three had worked in the Gas Fitters department and were familiar with its day-to-day operations. For reasons not explained in the record, only King was actually interviewed for the position. Phillips, Turner, and Vinson interviewed King. Phillips asked Turner to decide whether to promote King, and Turner decided to do so. According to an internal record, Turner's decision was based on King's "knowledge, leadership and willing[ness] to learn and adjust." (R. 36-6 Ex. 1.)

At the time he applied for the foreman position, King was working out of class as foreman in the Gas Fitters department on a rotating basis. In addition to a high school diploma, he had three years of college education. He began working at MLGW in 1991 and began working in the Gas Fitters department as an apprentice in 1998 and as a gas fitter in 2002. He also served on the Gas Fitters apprenticeship and safety committees.

## E.    District court decision

Jones filed suit claiming that he was denied both promotions because of his age and race. MLGW moved for summary judgment, claiming that its promotion decisions were based solely on the applicants' qualifications. MLGW also argued that Jones could not establish a prima facie case of age discrimination with respect to the Supervisor position because Turner, who received the promotion, was less than two years younger than Jones. Jones conceded the latter, but with respect to his other claims he argued that MLGW's reasons for denying him the promotions were pretextual.

6

The district court granted summary judgment to MLGW. The court found that Jones had established a prima facie case of race discrimination as to the Supervisor position and race and age discrimination as to the foreman position. Though Jones had never worked in the Gas Fitters department, the court found him qualified for the position because he "spent the bulk of his career in the Industrial Gas Department, where he performed many of the same routine tasks employees of the Gas Fitters Unit performed . . . [and] had been entrusted to serve in a leadership capacity as a crew leader in the Industrial Gas division." (R. 58 at 9.) The court then found that MLGW provided legitimate, non-discriminatory reasons for awarding the positions to Turner and King based on their qualifications and that Jones had offered no evidence that these reasons were pretexts for age or race discrimination. Jones appealed.

## II. ANALYSIS

**A.      Standard of review**

We review a district court's grant of summary judgment de novo. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

7

At the summary judgment stage, the moving party bears the initial burden of identifying parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, it may meet its initial burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To defeat a motion for summary judgment once the moving party has carried this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue for trial, *id*.; that is, the non-moving party must point to "evidence on which the jury could reasonably find" in its favor, *see Anderson*, 477 U.S. at 252. When considering a motion for summary judgment, the district court (and this Court, under de novo review) must draw all inferences in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

**B.      Discriminatory failure-to-promote**

Title VII and the ADEA forbid employers from denying promotions based on race or age. *See White*, 533 F.3d at 390; *Burzynski v. Cohen*, 264 F.3d 611, 621-22 (6th Cir. 2001). We apply the same analysis to discrimination claims brought under the THRA as to claims brought under Title VII and the ADEA. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009) (Title VII); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (ADEA). Because Jones offers only circumstantial, as opposed to direct, evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to his claims. *See McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802 (1973); *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 514-15 (6th Cir. 2003).

To establish a prima facie failure-to-promote case, Jones must show (1) he is a member of a protected class; (2) he applied for and was qualified for the promotion; (3) he was considered for and denied the promotion; and (4) another employee of similar qualifications who was not a member of the protected class received the promotion. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

If Jones establishes a prima facie case, a presumption of unlawful discrimination arises, and the burden of production shifts to MLGW to articulate some legitimate, nondiscriminatory reason for its action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07; *Grizzell*, 461 F.3d at 719-20. If MLGW meets this burden, the presumption drops from the case, and Jones is afforded an opportunity to prove that the reason offered is pretextual. *See St. Mary's Honor Ctr.*, 509 U.S. at 508. He may do so by showing that the reason (1) has no basis in fact; (2) did not actually motivate the decision not to promote him; or (3) was insufficient to warrant the decision not to promote him. *Grizzell*, 461 F.3d at 720. The ultimate burden of persuading the trier of fact remains with Jones, so to defeat a motion for summary judgment, he "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *See Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007).

### C.     Evidence of pretext

MLGW does not challenge the district court's finding that Jones established a prima facie case of race discrimination with respect to both positions and age discrimination with respect to the foreman position. Nor does Jones challenge the district court's finding that MLGW met its burden

of proffering legitimate, nondiscriminatory reasons for its decisions (that the applicants chosen were better qualified). The parties' dispute is whether Jones met his burden on pretext; that is, whether he introduced evidence from which a reasonable jury could conclude that MLGW's claim that it awarded the promotions to the best-qualified applicants was a pretext for discrimination.

### 1. Supervisor, Meter Installation

Jones offers three arguments for why MLGW's claim that Turner was the more qualified candidate was a pretext for racial discrimination. First, he points to an email exchange between HR representative Vinson and Samuel Ballard, who oversaw the Assessment Center, that he claims is evidence that MLGW did not actually follow its asserted candidate-selection criteria. In an email dated several days after Jones and Turner submitted their bids for the Supervisor position, Vinson wrote to Ballard to ask whether "Robert Turner . . . is eligible to go back through the [Assessment Center course for training as a Supervisor]." (R. 44-3 Ex. 1.) Ballard responded that Turner had already successfully completed the course in 2002. Jones argues that Vinson's email shows she was considering Turner for the position even though she believed he was lacking one of the listed requirements—completion of the Supervisory Assessment program—and argues that this undermines MLGW's claim that it will not consider applicants who lack the minimum requirements for an open position.

MLGW responds that the Assessment Center program merely provides "soft skills," such as leadership and problem-solving, and that a candidate who otherwise meets the criteria for a supervisory position can be sent to the Assessment Center to undergo the required course before assuming the position. In addition, MLGW points out that the job posting, which states "must

10

successfully complete Supervisor Assessment Center," does not specify that the program must be completed *before* the applicant is considered for the position. Jones has offered no evidence calling MLGW's explanation into question. Furthermore, while it does not completely undermine Jones's point (since Vinson's email still shows that she was considering Turner even though she thought he had not completed the Assessment Center program), the fact that Turner had, in fact, completed the program, weakens Jones's claim. Jones has not raised a genuine issue of material fact on this point.

Jones's second argument regarding pretext is that he was as experienced and qualified as Turner for the Supervisor position. Jones's argument, which is largely based on the length of time he has been employed at MLGW, is unpersuasive because Turner has been employed there significantly longer than Jones. In response to MLGW's assertion that it preferred to promote someone with experience in the Gas Fitters department because the Supervisor position is located in that department, Jones argues that the Industrial Gas section, in which he is employed, has "significant overlap" with the Gas Fitters department in terms of work skills, such that experience in his department provided equally valuable preparation for the Supervisor position. Even accepting Jones's argument as true, it does not render Jones *more* qualified than Turner. *See Bender*, 455 F.3d at 627 ("[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former."). In addition, Jones has not raised a genuine issue of material fact as to the truthfulness of MLGW's claimed preference to promote an employee with experience in the Gas Fitters department.

Third, Jones argues that he was more experienced and more qualified than the other two applicants selected to interview for the position, Ubel and Noel (both Caucasian), who had only been working at MLGW for ten or eleven years.[2] MLGW states that Ubel and Noel had "significant experience in the Gas Fitters department in which the Supervisor-Meter Installation is situated," while Jones had never worked in that department. (MLGW Br. 10.) Again, Jones offers no evidence casting doubt on this preference. Nor has Jones established that his qualifications were so superior to those of Ubel (employee for eighteen years, gas fitter apprentice/gas fitter for twelve years, foreman in Gas Fitters department since 2003) and Noel (employee for twenty-three years, ten years as gas fitter apprentice/gas fitter, three years as "gas regulator rep" in Pressure Regulation department, two years as training representative in Gas Operations Manager's department, and out-of-class foreman in the Gas Fitters department) that the decision to interview them rather than Jones is evidence of pretext. *See, e.g.*, *Bender*, 455 F.3d at 627. Therefore, we affirm the district court's grant of summary judgment on the claims relating to the Supervisor position.

    3.    *Foreman, Gas Fitters*

As mentioned above, this position became available when Turner was promoted to Supervisor, and Vinson selected three applicants to be interviewed for it: Rodger Joyner (42 years old, Caucasian), Aubrey King (40 years old, Caucasian), and Lawrence Davis (73 years old, African-

---

[2]Jones states, without citation, that Ubel and Noel had only been employed at MLGW for ten and eleven years, respectively, at the time of the promotion decision. (Jones Br. 9.) It appears that he is referring to the length of time they have worked as gas fitters, since the two men's bids for the promotion show that they had been employed at MLGW for about eighteen and twenty-three years, respectively. (R. 36-7.)

American).  Only King, who received the promotion, was interviewed, and the record contains almost no information about the qualifications of the other two interviewees.  Jones asserts that MLGW's explanation that King was more qualified than Jones based on his "knowledge, leadership and willing[ness] to learn and adjust" was a pretext for age and race discrimination.

Jones's main argument is that he was more experienced and knowledgeable than King.  Since he can point to "no other probative evidence of discrimination," he must show that his qualifications were so significantly better than King's that a jury could conclude that "no reasonable employer would have chosen" King over him.  *See Bender*, 455 F.3d at 627.  Jones makes no more than a conclusory attempt to do so.  King was working out of class as foreman in the Gas Fitters department on a rotating basis—this is significant since the position at issue *was* foreman in the Gas Fitters department.  King began at MLGW in 1991 and in the Gas Fitters department in 1998, first as a gas fitters apprentice, then as a gas fitter starting in 2002.  He also served on the Gas Fitters apprenticeship and safety committees.  While he had much less experience than Jones overall, he had much more experience in the Gas Fitters department.  In the absence of any other probative evidence of discrimination, Jones has failed to adduce evidence that his qualifications were so superior to King's that no reasonable employer would have selected King for the promotion, so he cannot defeat summary judgment.  *See id*.

Jones's other arguments on the question of pretext are also unavailing.  He claims that King was unqualified because he had not undergone the Assessment Center program before being interviewed, but as explained above MLGW provided a reasonable explanation for this, which Jones has not called into question.  Jones also speculates that MLGW strategically selected Davis (who is

13

African-American) as an interviewee *because* Davis was unqualified and MLGW knew it would not have to hire him. Without supporting evidence, this argument does not raise a genuine issue of material fact. Finally, Jones asserts that he was paid at a Grade 12 salary, while the crew leaders in his department who were Caucasian were paid at a Grade 13 salary. He offers no evidence in support of this claim other than a one-sentence assertion in his declaration. There is no evidence about how many other employees received the higher pay grade or whether they were senior to Jones, and no documentation of any kind. This argument also does not speak to the question of whether Jones was more qualified than King. In sum, Jones has not met his burden on pretext with respect to the foreman position.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the grant of summary judgment to MLGW.