NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0622n.06

No. 08-6549

United States Court of Appeals
**FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 22, 2010**
LEONARD GREEN, Clerk

DAVID EADES,                                                                                  )
                                                                                             )
      Plaintiff - Appellant,                                        )
                                                                                             )  Appeal from the United States
v.                                                                                           )  District Court for the Middle
                                                                                             )  District of Tennessee
BROOKDALE SENIOR LIVING, INC.,                                                              )
                                                                                             )
      Defendant - Appellee.                                          )

Before:  BOGGS, MOORE, and GIBSON,[*] Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Plaintiff David Eades appeals from an order of summary judgment entered against him on his claims of age discrimination and retaliation arising under the Age Discrimination in Employment Act ("ADEA") and Title VII, along with concomitant state law claims under the Tennessee Human Rights Act. Eades brought this action after Brookdale Senior Living, Inc. ("Brookdale") terminated his employment. He appeals the judgment only as to the retaliation claim, arguing that Brookdale offered a pretextual reason for dismissing him. Because the district court granted summary judgment where material facts concerning Brookdale's rationale for dismissing Eades are in dispute, we reverse.

---

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

I.

Eades began working for Brookdale's predecessor in July 2005 as a Regional Rehab Director. One year later, Brookdale purchased the company, and in August 2006 Eades became a Regional Director of Start-up Operations. For the first thirty to forty-five days in that position, Eades reported to Lee Anne Fein. He later reported to Jack Carney. Eades had a number of interactions with Fein – both while she was his direct supervisor and continuing virtually through the end of his employment – that he described as "harassing, degrading, intimidating, and inappropriate by nature" and that he ultimately concluded were motivated by age discrimination. Eades was forty-one years old when he was hired and forty-two when he was terminated.

In addition to Eades, twenty-seven-year-old Zach Zerbonia was named as a Regional Director of Start-up Operations. He reported to the same individuals as Eades. In reaching the conclusion that he was a victim of age discrimination, Eades compared his own treatment to that of Zerbonia, with whom he worked closely. Zerbonia recognized that Fein treated Eades differently than she treated him.

Because Eades dismissed his Title VII claims and has not appealed the judgment as to his discrimination claims under the ADEA and the Tennessee Human Rights Act, the only remaining claim is Brookdale's alleged retaliation against Eades for engaging in a protected activity. Thus, we need not set forth the facts concerning his discrimination allegations.

Eades's retaliation claim begins with his complaint to Brookdale's human resources department about Fein's conduct. There he spoke with Dwight Tew, who told Eades that he could contact Terry Frisby, the company's human resources compliance officer. Eades did call Frisby and eventually arranged a meeting where he inquired about his rights. Frisby told him that "corporate"

had talked to Fein about her people skills to no avail, and he recommended that Eades not pursue a formal investigation. Eades next contacted Greg Richard, the company's Chief Operating Officer, who suggested that Eades create a written list of concerns and address them directly with Fein.

Eades did meet with Fein. In fact, they met more than once. The first meeting was actually at her request, and Eades does not know whether Fein knew that he had been complaining about her or if the timing was merely coincidental. Jack Carney, the Senior Regional Director of Innovative Senior Care and Eades's supervisor, also attended this meeting. Fein told Eades that she was not going to fire him, but that she wanted to discuss a specific incident with him and review his job responsibilities. She told him that she was committed to him being a part of the regional team.

Eades's second meeting with Fein was at his request. It took place on October 9, 2006, and Carney and Tew also attended. Eades voiced his concerns about specific instances of Fein's behavior, each of which she refuted. Fein told Carney that Eades had been given his current position because he had not been performing well in his previous position, but that was news to Eades. Fein also said that Eades would be put on an action plan because his performance had not improved, and Tew told Eades he would receive the plan within seven days. Eades never received it.

On October 18, Eades emailed a letter to Richard and the co-CEOs of Brookdale outlining his complaints and stating that he believed he was being discriminated against because of his age. In response, Richard and Frisby met with Eades the following day, and Richard told Eades that he thought it would be difficult for Eades to continue working with Fein. Eades agreed with him, and Richard said there might be other positions in the company for Eades and asked if he would be interested in a severance package. Eades said he would be interested and asked if he was being fired. Richard and Frisby told him he was not. Richard mentioned a six-month severance with a two-

month extension if Eades had not found a replacement position, and then he told Eades to go home early and said they would be in touch with him.

Zerbonia called Eades later that evening and said that Fein told him that Eades was no longer employed by Brookdale. Eades tried to access his company email and was unable to do so. Frisby called Eades the next day to tell him that the company was offering him only a three-month severance package because of questions about his severance from his last employer. Eades decided not to accept the company's offer because he believed he had suffered unfair and illegal treatment. Frisby made no mention of other positions within the company that might be available to Eades.

On November 21, 2006, Eades filed charges with the EEOC, alleging that he was the victim of age discrimination and retaliation. He received a Notice of Right to Sue on June 20, 2007, and thereafter filed this complaint alleging age discrimination and retaliation under the ADEA, Title VII, and Tennessee state law. He later dismissed his Title VII claims, and the district court granted Brookdale's motion for summary judgment. Eades timely appealed.

II.

This court reviews the district court's grant of summary judgment de novo, viewing the facts and inferences therefrom in the light most favorable to the nonmoving party. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Eades alleges that Brookdale retaliated by firing him after he engaged in the protected activity of complaining about discriminatory treatment he received on the basis of his age. Brookdale conceded in the district court that Eades established a prima facie case of retaliation. On appeal, Brookdale seeks to retract its concession and argues that firing Eades did not constitute a materially

adverse action related to his protected activity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("materially adverse" action is one "which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotation marks and citation omitted). We will hold Brookdale to its concession. Even without it, though, the argument fails. Terminating a person's employment is a materially adverse action.

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory explanation for the discharge. The plaintiff then has the opportunity to demonstrate by a preponderance of the evidence that the employer's proffered explanation is a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000).

Brookdale states clearly and unequivocally in its brief on appeal that it fired Eades for a "legitimate, non-retaliatory reason," namely "because he stated that he could no longer work with Ms. Fein and requested a severance package." Because Brookdale has articulated a legitimate, non-discriminatory reason for terminating Eades's employment, Eades cannot prevail without demonstrating by a preponderance of the evidence that the proffered reason was a pretext. *Id*. To establish pretext, Eades must show that Brookdale's stated reason has no basis in fact, did not actually motivate Brookdale to fire him, or was insufficient to warrant his firing. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).

As Brookdale points out, Eades must point to evidence that shows not only that there is a genuine issue of material fact as to pretext but also that there is a genuine issue as to whether the real reason for his firing was intentional retaliation. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). However, Eades may rely on "the trier of fact to infer the ultimate fact of

discrimination from the falsity of the employer's explanation," *id*. at 544-45 (quoting *Reeves*, 530 U.S. at 147), if he presents a genuine issue of material fact as to the falsity of Brookdale's proffered reason.

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 147-48. Eades asserts that Brookdale has advanced a number of different reasons for firing him from the time of his dismissal through this appeal, and that such inconsistency raises a genuine issue of material fact as to whether the proffered reasons are true. The district court considered Eades's argument and acknowledged that a changing rationale can be evidence of pretext. However, the district court concluded that Eades provided no evidence of pretext, Brookdale's reasons were amply supported, and "the fact that the defendant's explanations have become more nuanced and detailed over the course of litigation does not establish evidence of pretext."

Looking at the facts in the light most favorable to Eades, without resolving any factual disputes, leads us to a different conclusion. Brookdale has changed its story many times since Eades was fired, including advancing different reasons in its brief on appeal than it represented to the district court.

First, when Eades had his ultimate meeting with Richard and Frisby, Eades indicated that he would consider a severance package. There is no evidence, however, that he said anything that would have foreclosed the possibility of his continuing employment with Brookdale, either in his current position or in a different capacity. While he appears to have been unresponsive to a suggestion by Richard that other positions might be available to him, we are forbidden at the

summary judgment phase to draw the inference that Eades's lack of response signaled his unwillingness to consider the possibility of changing jobs. Brookdale now asserts that Eades said he could not work with Fein and that he wanted a severance package, but this position is inconsistent with the record testimony of the attendees of that meeting and the inferences we must draw therefrom.

Second, Eades filed a charge of discrimination with the EEOC approximately one month after he was fired. In its position statement in response to the charge, Brookdale wrote:

> For the reasons shown below, [Eades] was discharged for valid non-discriminatory reasons, none of which had anything to do with anything other than [Eades's] complete inability . . . to perform the work for which he was hired.
>
> . . .
>
> Why was [Eades] terminated? The answer lies in his lack of any performance in any position. The offer of severance given to [him] was not and should not be considered anything other than an attempt to allow [him] to leave the employ of [Brookdale] with some dignity. [Eades] has chosen this path, and as such, [Brookdale] must defend itself.
>
> . . .
>
> Was the reason for his termination as he suggests, or was it for other reasons? A close look at the actual facts above, and not mere allegations, can lead to but one conclusion – [Eades] was terminated for not doing his job. . . . His termination was not a retaliation for participating in protected activity, but based upon failure of [Eades] to meet the most basic element of his job according to his resume and job duties – to work in a professional relationship to his coworkers, subordinates, and vulnerable senior adults. He failed with all three classes of persons.

On appeal, Brookdale tried to minimize this response as having been prepared by a "non-decisionmaker" (the company's Senior Vice President for Legal Services), who "mistakenly" informed the EEOC that Eades was terminated due to his performance. The lawyer consulted with Fein and Richard after having reviewed Eades's employment file and after drafting the response.

Brookdale offers no evidence that either one suggested that the response was erroneous, nor does it explain how its Senior Vice President for Legal Services made such a "mistake."

Third, in his deposition, Richard testified that he made the decision to terminate Eades's employment after he learned that Eades had received a severance payment from a former employer and had kept the money in spite of having agreed that he would return it if he found replacement employment.

Fourth, in its motion for summary judgment, Brookdale advanced three reasons for terminating Eades's employment: 1) Eades had performance issues; 2) he could no longer work with Fein; and 3) he declined the severance package he was offered. However, Eades denies that he was ever informed that he had performance issues, and Brookdale offers no evidence to the contrary. In addition, Richard testified that he asked Fein if she thought Eades should be terminated, and she said no.

Finally, in its brief on appeal, Brookdale explicitly denies having terminated Eades for performance issues. In describing the district court's ruling, Brookdale changes its characterization of its response to the EEOC charge: "[A] non-decisionmaker [Senior Vice President for Legal Services] advanced a legitimate reason, albeit a reason upon which Brookdale did not rely, for Eades'[s] termination."

"An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). "Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justification for firing him changed over time, [plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was

a pretext for discrimination." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). The *extent* to which such shifting justifications are probative of pretext depends upon the circumstances of a given case. At its root, pretext is a common-sense inquiry into whether the employer took the adverse employment action for the stated reason or not. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Hence, we look not only to whether changes in an employer's rationale have occurred, but to whether the circumstances could permit a rational factfinder to conclude that these changes are indicative that the currently-proffered explanation is false. *See Reeves*, 530 U.S. at 148-49 ("Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include . . . the probative value of the proof that the employer's explanation is false.").

Brookdale's many changes in its explanation for Eades's termination may or may not lead to an ultimate conclusion that it retaliated against Eades for engaging in a protected activity, but certainly they show a genuine issue of material fact that should preclude summary judgment. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006) (inconsistency between what employer told plaintiff and what it asserted in lawsuits as its reasons for terminating plaintiff's employment "is suspicious and is evidence of pretext"). In particular, Brookdale's unequivocal assertion to the EEOC that Eades "was discharged for valid non-discriminatory reasons, none of which had anything to do with anything other than [Eades's] complete inability to perform the work for which he was hired" simply cannot, on its terms, be reconciled with its later explanations, a fact that would permit a rational factfinder to conclude that Brookdale's currently-proffered rationale is pretextual. *Compare Thomas v. Union Inst.*, 98 F. App'x 462 (6th Cir. 2004) (employer's shifting rationale held to be insufficient evidence of pretext because all rationales were internally inconsistent) with *Peck*

*v. Elyria Foundry Co.*, 2009 WL 2868831 (6th Cir. Sept. 8, 2009) (slip op.) (hiring decisionmaker's logically contradictory reasons for not hiring claimant held to be evidence of pretext).

### III.

Eades argues that the temporal proximity of his complaint and discharge is evidence that Brookdale's proffered reason of poor performance as a reason for his discharge is pretextual. As he points out, there is no indication in the record that Brookdale considered his performance in the one day that passed between his complaint and his discharge. Eades acknowledges that temporal proximity is typically regarded as evidence of a causal connection for the purpose of satisfying a prima facie case of retaliation, *see Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), and that this court views temporal proximity in the pretext analysis as indirect evidence to support a pretext claim and rebut proffered non-discriminatory reason for an adverse employment action, *see Imwalle*, 515 F.3d at 550-51; *Asmo*, 471 F.3d at 598.

Because we have already concluded that material disputed facts exist that preclude summary judgment, we need not reach this argument. We reverse the judgment of the district court.