NOT RECOMMENDED FOR PUBLICATION
File Name: 12a1244n.06

No. 11-1779

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Dec 04, 2012***
DEBORAH S. HUNT, Clerk

GIRISH SHAH,

    Plaintiff-Appellant,

        v.

NXP SEMICONDUCTORS USA, INC.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**Before: BOGGS** and **WHITE**, Circuit Judges; and **BLACK**, District Judge.[*]

**BLACK, District Judge**. Girish Shah ("Shah") appeals the district court's grant of summary judgment in favor of his former employer, NXP Semiconductors USA, Inc. ("NXP"), on his claims of age and national-origin discrimination. For the following reasons, we **AFFIRM** the judgment of the district court.

I. **BACKGROUND FACTS**

Plaintiff-Appellant Girish Shah timely appeals the order of the district court granting summary judgment in favor of Defendant NXP Semiconductors USA, Inc. Shah alleged age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA") (Count I), and the Michigan Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et seq*. ("ELCRA")

---

[*] Hon. Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

Case No. 11-1779
*Shah v. NXP Semiconductors USA, Inc.*

(Count II), and national-origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count III);[2] and the Michigan ELCRA (Count IV).

NXP designs and sells semiconductors for use in electronic devices, including those used in the automotive industry. NXP's Automotive Americas Group, which is based in Farmington Hills, Michigan, is responsible for both selling semiconductors and for ensuring their quality (*i.e.*, ensuring that the semiconductors perform as intended). Thus, the Automotive Americas Group has sales and marketing employees and a quality control subgroup. Leland Key is NXP's Senior Director of Sales and Marketing for the Automotive Americas Group. In this capacity, Key oversees the Automotive Americas Group.

In March 2007, NXP hired Shah as a Field Quality Engineer ("FQE") within NXP's Automotive Americas Group. FQEs are responsible for interfacing with NXP's automotive customers to ensure that NXP's semiconductors function properly. At the time of his hiring, Shah, who is of Indian descent, was 59 years old. Shah joined four other FQEs who were already working for NXP: Mauricio Acosta, John Henninger, Mike Laituri, and Brad Webber. As an FQE, Shah worked on approximately 20-22 customer accounts.

---

[2] Except for passing references to his national origin, Shah's appellate brief focuses only on alleged age discrimination. Appellant Br. at 39-40 (claiming that even if the District Court did not err in finding that Knoell replaced Shah, "the District Court still erred in granting [NXP's] Motion for Summary Judgment on [Shah's] claims of age discrimination because [Shah] presented sufficient additional circumstantial evidence of age discrimination to satisfy the heightened standard applied to RIF cases."). "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007).

Until early 2008, FQEs reported to Marty Michaels, NXP's Quality Manager. When Michaels retired in early 2008, the FQEs began reporting to their respective sales managers: Shah reported to Ken Roberts; the other FQEs reported to other sales managers.

In February 2009, Drue Freeman, NXP's Global Vice President of Quality & Customer Excellence for the Automotive & Identification business line, asked Key to provide a written analysis of his resources and how Key would handle a potential reduction in force. Key consulted NXP's written reduction in force ("RIF") policy, which gives managers discretion to "decide which job functions and job classifications are to be affected" based on a combination of factors enumerated in the policy. The policy states that "[i]n the event all of the [factors] are deemed essentially equal, length of service may be considered."

Key's preferred option was to maintain the current headcount, but he determined that if he had to eliminate one employee, Shah's position would be selected for elimination. In making this determination, Key testified that he "used the reduction in force policy as [his] guideline." Key testified that he had firsthand knowledge of the quality of his employees' work and determined that all five FQEs were about equal in terms of job performance. Thus, according to Key, the decision to eliminate Shah's position was based on the fact that he had the least seniority among the five FQEs.

Because Michaels's retirement in early 2008 created a supervisory void, NXP began interviewing replacements. However, the search was interrupted when NXP's management instituted a company-wide hiring freeze in June 2008.

In early March 2009, NXP learned that Bob Knoell was let go by another company. Key knew Knoell and was impressed with his credentials and experience. NXP determined that Knoell was the top candidate to replace Michaels but could not offer him the position due to the hiring freeze that had been implemented in June 2008.

Also in March 2009, Key determined that NXP would benefit from a reorganization of the quality-control subgroup of its Automotive Americas Group. Specifically, Key determined that it would be more efficient for the FQEs to report to one manager instead of several. (*Id.*) Key determined that none of the existing FQEs exhibited the necessary leadership abilities and, instead, Knoell would be the best candidate for the newly created position. In his deposition, Key stated:

> It was my opinion that by having a Quality Manager in place that we could drive efficiencies in our processes. Bob also was a well-known, I'll call him expert in my opinion, expert in semiconductor reliability and instrumental in the formation of a number of automotive quality organizations. So he would have been a good acquisition for the team.

Key also stated in an email that he "[saw] this as an opportunity to upgrade our current organization."

According to Key, he was informed by his manager, Drue Freeman, that he could not hire Knoell without terminating an existing employee. Pursuant to the analysis performed one month earlier at Freeman's request, Key determined that Shah's position would be eliminated because, all other factors being equal, Shah had the least seniority of the five FQEs.

In the same month, Freeman and Key exchanged several email messages. In one, Freeman asked Key if Key could hire Knoell and fire Shah. Key responded:

> You read my mind . . . [sic] as you know difficult to fire quickly here, need to build a case etc. . . . My thought is to eliminate the quality control engineer role (Girish's position), and hire [Knoell] as a regional quality control mgr, (where he would also handle Girish's accounts directly), so we could then RIF Girish, rather than fire him.

On April 2, 2009, Key emailed Kapps, NXP's Human Resources Business Partner:

> We see an opportunity to upgrade our current organization and would propose the following: RIF an existing FQE from our Farmington Hills office . . . . The person in mind has ~ 2 years of service with NXP. Create a new position – Automotive Regional Quality Manager – and hire Bob Knoell for this role. . . . Bob would provide some regional leadership for the . . . quality team . . . but would also have some direct account responsibility.

Before terminating Shah, Key consulted with Kapps. The elimination of Shah's position and the creation of the new management-level position was reviewed and approved by NXP's Employee Termination Oversight Committee ("ETOC"), a committee charged with reviewing proposed termination decisions to ensure that they comply with NXP's anti-discrimination and RIF policies. The documentation reviewed by the ETOC contained certain personnel information, including the age and ethnicity of the two FQEs considered for dismissal, Shah and Michael Laituri. The document lists Shah as being Asian and 61.27 years old; it lists Laituri as being White and 42.72 years old.

Randall McMills, a senior official in NXP's Human Resources department and member of the ETOC, testified that the document reviewed by the ETOC lists employee ages so that the ETOC can make sure that it does not "eliminate all of [its] older workers and keep only [its] younger workers."

Shah was terminated on May 1, 2009, due to a "reorganization and work force reduction." Shah was 61 years old at the time of his termination. Following Shah's termination, the four

remaining FQEs took over around 20 of his 20-22 accounts. NXP has not hired any FQEs since Shah's termination. Moreover, one of the four FQEs who remained after Shah's termination, Mauricio Acosta, voluntarily resigned in early 2010 and NXP has not hired a replacement.

Knoell, who was then 53 years old, began working for NXP in the newly-created position of Automotive Quality Manager in May 2009. Knoell occupies Shah's former office and reports to Key. As Automotive Quality Manager, Knoell spends the majority of his time performing management functions. Knoell holds a local pay grade of E5, which is the grade given to NXP's first-level management positions.[3] In addition, Knoell services five client accounts, three of which were formerly serviced by Shah. Knoell assumed these client accounts so that he could better relate to the FQEs and because he was familiar with the clients.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*. *Hollway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has the burden of proving the absence of a genuine issue of material fact and its entitlement to summary judgment as a matter of law. *Id.* The evidence must be considered in the light most favorable to the non-moving party, but there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, there must

---

[3] Shah began his employment at a pay grade of E3. At the time of his termination, Shah held a pay grade of E4.

Case No. 11-1779
*Shah v. NXP Semiconductors USA, Inc.*

be more than a "mere existence of a scintilla of evidence" to satisfy the plaintiff's burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

This court also reviews a district court's denial of a motion for reconsideration of a grant of summary judgement *de novo*. *Columbia Gas Transmission Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). However, we review a district court's refusal to consider evidence produced for the first time in a motion for reconsideration (such as an affidavit) for an abuse of discretion. *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982).

## III.  ANALYSIS

A plaintiff can make a *prima facie* case of age discrimination under the ADEA by showing that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) either he was replaced by a significantly younger person, or a similarly situated younger employee was not subject to the same adverse employment action. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).[4]  An allegation that the person was replaced by a younger individual supports an inference of discrimination only if the age difference is significant. *Blizzard v. Marian Technical Coll.*, No. 11-3441, 2012 U.S. App.

_____

[4] Only the fourth element of Shah's *prima facie* case is in dispute. Shah is over the age of 40, is of Indian descent, his termination was an adverse employment action, and NXP concedes that he was qualified for the FQE position. Shah was the oldest of the five Automotive FQEs and the only one of Indian descent.

LEXIS 21846, at *5-6 (6th Cir. Oct. 19, 2012).[5] NXP then must articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 802-03. If NXP satisfies that burden, Shah must produce sufficient evidence to create a genuine issue of material fact that NXP's proffered justification is a pretext for unlawful discrimination. *Id.* at 804.

In this case, however, there is a disagreement as to which elements make up the *prima facie* case, because there is a dispute as to whether Shah was terminated as a result of a reduction in force ("RIF"). Whereas an ADEA or Title VII plaintiff would ordinarily have to prove either that he was replaced by a person outside the protected class or that a person outside the protected class who was similarly situated was not subject to the same adverse employment action, when a plaintiff is terminated in the context of a RIF, that element need not be shown; rather, the fourth element of *McDonnell Douglas* is modified (heightened) to require some "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for

---

[5] NXP maintains that Shah's age discrimination claim brought under the Michigan ELCRA should be analyzed under the same standard as his age discrimination claim brought under the ADEA. However, Plaintiff argues that in *Gross v. RBL Financial Services, Inc.*, 557 U.S. 167, 174-75 (2009), the Supreme Court clarified that there is a distinction between what a plaintiff is required to prove in a disparate treatment claim under the ADEA as opposed to Title VII. "To establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* at 176. That is in contrast to Title VII, where a plaintiff can succeed on a claim "in which an improper consideration was 'a motivating factor' for an adverse employment decision." *Id.* at 174. The Court need not resolve this conflict because under either standard Shah fails to make a *prima facie* case.

impermissible reasons." *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990).[6] An employee

is not eliminated as part of a RIF when he is replaced after being terminated. *Id.*

### A.  Whether Plaintiff Was Replaced

First, Shah argues that the district court erred in finding that no reasonable jury could

conclude that he was replaced by Robert Knoell.

This court has delineated the circumstances in which a RIF occurs and triggers application

of the modified fourth element of a *prima facie* case.

> A work force reduction situation occurs when business considerations cause an
> employer to eliminate one or more positions within the company.  An employee is
> not eliminated as part of a work force reduction when he or she is replaced after his
> or her discharge.  However, a person is not replaced when another employee is
> assigned to perform the plaintiff's duties in addition to other duties, or when the work
> is redistributed among other existing employees already performing related work.

*Barnes*, 896 F.2d at 1465.  "Eliminating a single job is sufficient to constitute a legitimate reduction

in force." *Lockett v. March USA, Inc.*, No. 08-3413, 2009 U.S. App. LEXIS 26266, at *23 (6th Cir.

Dec. 3, 2009).

Shah claims that the district court, concluding that he was terminated as part of a RIF, viewed

the evidence in a light most favorable to NXP, pointing to: (1) an excerpt from Knoell's April 2010

deposition testimony in which Knoell allegedly admitted that he spends as little as 20% of his time

on management-related activities; (2) Shah's declaration, executed 12 days after the district court

granted NXP's motion for summary judgment, in which he asserts that he spent 80 to 90 percent of

---

[6]  "The purpose of the additional evidence requirement is to ensure, in reduction of force
cases, that the plaintiff has presented evidence to show that there is a change and the reduction in
force is not the reason for the termination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

his time servicing the three accounts that Knoell took over; and (3) isolated e-mails allegedly

showing that NXP viewed Knoell as a candidate for a position as FQE and not Automotive Quality

Manager. Appellant Br. at 30-32. We will address each argument in turn.

### 1.      Shah's Job Responsibilities

The district court determined that "as Automotive Quality Manager, Knoell spends the

majority of his time performing management functions." Shah claims that this determination was

improper, based on Knoell's testimony that: "Well, let's see, what did I say, 30 to 50, so that leaves

about 20 to 40 percent [of my time] for management responsibilities." However, as the District

Court noted, "Plaintiff ignores Knoell's testimony that he spends an additional 20% of his time

serving as technical liaison, a duty that Plaintiff did not perform as a FQE. Thus, Knoell spends at

least 40-60% of his time performing duties that were not performed by [Shah]." For example,

Knoell leads nine engineers in NXP's European offices on a quality-improvement program.

Moreover, Knoell's job responsibilities as a manager are significantly different from those

Shah performed in his non-management FQE job. For example, Knoell supervises the FQEs,

completes their performance reviews, determines their salaries and bonuses, spends time each month

analyzing and providing reports to Key about their activities, and meets with each FQE regularly.

Shah did not perform these management duties. Shah's responsibility as an FQE was to interface

with customers to ensure they were satisfied with the NXP products they purchased.

Shah and Knoell also have different reporting structures. Shah reported to Roberts, the

NARA team account manager, and Knoell reports directly to Key. Additionally, Knoell's

managerial position is classified internally at a higher corporate job grade and pay grade, whereas Shah worked in a non-management job grade and non-managerial pay grade.

Additionally, where Shah had no control over the administration of any customer accounts, Knoell's duties include determining how to distribute accounts, including accounts that Shah formerly serviced. Key stated in his deposition: "It was up to Bob [Knoell] how he wanted to do that. I didn't instruct him on what accounts to handle and what accounts not to handle." Shortly after Knoell joined NXP, he redistributed the overwhelming majority of Shah's 20 accounts to the four remaining FQEs. While Knoell did take over three of Shah's accounts, he explained: "I know a number of people at these customer sites (and they know me)" and taking over the accounts "will give me a good idea as to what you all go through every day with your major accounts so I can understand the horsepower required."

Accordingly, the district court properly concluded that Knoell's duties "are materially different from those formerly performed by [Shah]." "[A] person is not replaced when another employee is assigned to perform the Plaintiff's duties in addition to other duties." *Barnes*, 896 F.2d at 1465.

### 2.    Accounts Serviced

Next, Shah argues that it was not "by chance" that Knoell ended up with the Rosch, Bose, and TRW accounts, which were his three largest accounts and took approximately 80-90% of his time. Shah maintains that before Knoell was hired, NXP had already contemplated that Knoell would service Shah's former accounts.

The district court found that "three of the five accounts serviced by Knoell were formerly serviced by Shah. Knoell assumed these client accounts so that he could better relate to the FQEs and because he was familiar with the clients." Still, the court concluded that "Knoell supervise[d] the FQEs; he is not himself a FQE. While it is true that Knoell's job duties slightly overlap with [Shah's] job duties to the extent that Knoell took over three of [Shah's] approximately 20-22 accounts, the vast majority of [Shah's] accounts were redistributed among existing FQEs." The inquiry is not limited to how Shah spent his time, but also on the duties of the person who allegedly replaced him, such that an employee who performs duties in addition to duties that Shah performed is not a "replacement." *Geiger v. Tower Auto*, 579 F.3d 614, 623 (6th Cir. 2009).

Accordingly, the fact that Knoell assumed responsibility for Shah's three largest accounts, given the other facts of Knoell's employment, is insufficient to establish that he replaced Shah. Moreover, the record is clear that in 2008, NXP interviewed Knoell to replace Marty Michaels, NXP's Quality Manager, but that the search was interrupted when NXP's management instituted a company-wide hiring freeze in June 2008.

### 3.     Internal Emails

Finally, Shah argues that several emails show that Knoell replaced him, because they "reveal that, despite the formal title that [Knoell] was ultimately given (Quality Manager), [he] was actually being viewed as a candidate for a Quality Engineer position." Appellant Br. at 32.

In an April 14, 2009, email from Sankara Narayan (NXP's Executive for "quality function") to Randy McMills (NXP's Senior Vice President for Human Resources in the Americas), Ms. Narayan made the following statement:

> Two weeks ago Drue [Freeman] indicated that he would like to have a high caliber person as Field quality engineer in the US to support automotive customers and also said may be Bob [Knoell] from Visteon would be interested in that. I am aware of this and also agreed with Drue that he can go ahead with this as a replacement to and upgrading of a current [Field Quality Engineer] playing this role.

The district court held that the use of the term "replacement" by NXP's employees "is not controlling of the legal analysis." Shah argues that while NXP's internal references to Knoell as Shah's replacement is not controlling of the legal analysis, in that it does not require summary judgment in his favor, a reasonable jury could conclude that NXP's internal references to Knoell as his replacement actually meant what was plainly indicated.

However, Narayan's email does not mention Shah by name, nor did Shah produce any evidence that Narayan knew either Shah's or Knoell's job responsibilities, age, or national origin. Moreover, McMills testified that NXP uses the word "replacement" in reference to headcount as opposed to comparisons of job duties.

The second email was an exchange between Freeman and Key, in which Key wrote that he would like to "eliminate the quality engineer role (Girish's position) and hire Bob as a regional automotive quality mgr, (where he would also handle [Girish's] accounts directly)." It is undisputed, however, that Knoell did not take over all of Shah's accounts. Moreover, even if Knoell had taken all of Shah's accounts, that hypothetical fact would not support a conclusion that Knoell "replaced"

Shah in light of all of the additional management tasks and other duties that Knoell performs. *See infra* Section III.A.2.

Finally, there is an email drafted by Mark Belloni, an NXP financial planning employee in California, who wrote that Knoell "is replacing Girish." However, Belloni knew nothing about Shah's or Knoell's respective job duties. Appellant Br. at 32. Additionally, there is no evidence that Belloni played a part in any decision affecting Shah's employment or that he knew Shah's or Knoell's age or national origin. Moreover, after McMills informed Belloni by email that Knoell "is a Quality Manager for the Automotive [Business Unit.] He should be included in the quality headcount," Belloni responded that "[w]e need to be clear with these positions. They are not the same. Girish Shah was a Quality Engineer and has been termed. Robert Knoell was hired as a Quality Manager."

Accordingly, Shah's arguments are simply unsupported conjecture. In order to survive summary judgment, a plaintiff "cannot rely on conjecture or conclusory accusations." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Considering the facts in the light most favorable to Shah, we agree as a matter of law that Shah was not replaced.

**B.     *Prima Facie* Case Under the Heightened Analysis**

Next, Shah argues that even if Knoell did not technically replace him, the district court still erred in granting NXP's motion for summary judgment because he presented sufficient additional circumstantial evidence of age discrimination to satisfy the heightened standard applied to RIF cases.

**1.     RIF as Additional Evidence of Discrimination**

Shah maintains that NXP never implemented the "planned" RIF which contemplated an overall reduction in headcount of one person, because Knoell filled the vacancy created by Shah's termination. Moreover, in February 2009, Key's clear preference was for no changes to occur and for all employees to be kept in place. As of February 2009, Key testified that NXP "had the requisite number of quality people necessary to support the needs of our business." Key's February 2009 RIF plan/analysis did not contemplate a reorganization (with the elimination of a "Quality Engineer" position and the creation of a "Quality Manager" position). JoAnn Knapps, an employee in NXP Human Resources, confirmed that, prior to Knoell becoming available, there were no discussions about eliminating a FQE position. However, one month later, when Knoell became available, Key wanted to conduct a RIF and reorganize his department.[7] Shah argues that, when the facts are viewed in a light most favorable to him, a reasonable jury could conclude that this sudden change in Key's opinion was actually a reflection of NXP's desire to terminate him and hire a younger employee.

However, Shah ignores the change in circumstances that took place between February and March 2009. Key indicated in February 2009 that he preferred to maintain his existing headcount, but he also noted that Shah would be the next employee to be terminated in the event of a further workforce reduction. One month later, Knoell unexpectedly was looking for a new job and Key seized upon the opportunity to hire Knoell into a new management position, that required Key to eliminate a position within his organization. Key decided to eliminate Shah's position in accordance

---

[7] Key admitted that neither his boss nor anyone in human resources directed him to implement the alleged reorganization/RIF.

with NXP's RIF Policy because he had the least seniority among the FQEs. NXP alleges that by

hiring Knoell to fill the supervisory void that resulted from Michaels's retirement, Key felt that he

could improve operational efficiencies by returning to an organizational structure in which all four

FQEs would report to one manager who could better oversee their work and ensure they were

implementing best practices as a group. Moreover, Key was already familiar with Knoell's work at

Visteon, one of NXP's customers. Indeed, Key recommended Knoell to his superiors to fill

Michaels's position in early 2008, and after subsequent interviews of several candidates, Knoell

emerged as NXP's top candidate to fill that position until the unanticipated hiring freeze prevented

NXP from formally offering him the job. Therefore, while the RIF standing alone *may* have served

as additional evidence of discrimination, even when considering all of the facts in the light most

favorable to Shah, we cannot find it to be so in this case.

### 2.     Longevity as Additional Evidence of Discrimination

Additionally, Shah claims that the group of NXP employees -- Roberts, Michaels, Webber,

and Laituri -- who interviewed him and other candidates for the FQE position in 2007, purportedly

considered the respective candidates' longevity[8] in making a decision about which candidate to hire.

Both of the other candidates were younger than Shah. Only after both of the younger candidates

declined to take the position was Shah offered the job, which he accepted. However, as the district

court noted, Shah "pointed to nothing in the record to suggest that those involved in hiring him were

---

[8] *Wharton v. Forman-Rupp Co.*, 309 F. App'x 990, 991 (6th Cir. 2009) (holding that a statement made by vice president regarding "longevity" constituted direct evidence of age discrimination).

involved in his termination." Specifically, Michaels retired in 2008, Roberts had no role in NCP's reorganization decision, and Webber and Laituri were non-management FQEs, just like Shah. *See Geiger*, 579 F.3d at 620-22 ("[A]ny discriminatory statements must come from decision makers to constitute evidence of discrimination.").[9]

## C. Legitimate Nondiscriminatory Reasons and Pretext

Even if Shah were able to make out a *prima facie* case, NXP would still prevail because Shah failed to establish that NXP's reason for termination was pretextual. An employer's proffered reason is not pretextual unless it is shown both that the reason was false and that discrimination was the real reason. *Harris v. Metro. Gov't of Nashville & Davidson Co.*, 594 F.3d 476, 486 (6th Cir. 2010). An employer is entitled to summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Evidence of an employer's business restructuring, which may include the elimination of jobs or termination of otherwise competent employees based on seniority, satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination. *Aldridge v. City of Memphis*, 404 F. App'x 29, 39 (6th Cir. 2010) (holding that defendants' elimination of plaintiffs' jobs during reorganization satisfied their burden of producing

---

[9] Additionally, Shah has not alleged that the "cat's paw" theory discussed in *Staub v. Proctor Hosp.*, ___ U.S. ___, 131 S. Ct. 1186 (2011), has any application to the present facts. There is no evidence that Key or anyone else relied on any supposedly biased statements that were purportedly made when Shah was hired two years earlier.

a legitimate, non-discriminatory reason for plaintiffs' termination).[10]  Therefore, Shah bore the burden of establishing a genuine issue of material fact that NXP's proffered reason for terminating him was not the true reason, but was instead a pretext for intentional discrimination.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### 1. Internal Emails

Shah argues that the district court improperly viewed internal emails on the issue of fabrication (pretext) in a light most favorable to NXP.  Shah maintains that these emails reveal that NXP fabricated a scheme to terminate him, "redefine the role," and then hire Knoell, in order to claim that he was terminated through a reorganization and RIF.

In a series of email exchanges dated March 12, 2009, between Freeman and Key, Freeman inquired of Key: "Could you hire [Knoell] and fire Girish?  Sorry had to ask."  Key responded: "You read my mind . . . [sic] as you know difficult to fire quickly here, need to build a case etc. I'd planned to discuss with our local HR.  My thought is to . . . hire Bob as a regional automotive quality mgr, (where he would also handle Girish's accounts directly), so we could then RIF Girish, rather than fire him."

Shah argues that these internal emails both reveal that the RIF was fabricated.  In *Reeves*, the Court explained:

> It is permissible for the trier of fact in an employment discrimination case to infer the
> ultimate fact of discrimination from the falsity of the employer's explanation; proof

---

[10]  *See also EEOC v. Sara Lee Corp.*, 237 F.3d 349, 354-55 (4th Cir. 2001) (employer's seniority policy favoring individuals with longer tenure at the company was "legitimate and non-discriminatory" and "a prime example of a policy that a company is entitled to respect").

> that a defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive [evincing guilt] . . . once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Reeves*, 530 U.S. at 147-48. Shah argues that NXP's method of working backwards (first determining to hire Knoell and then determining to terminate Shah through a claimed reorganization/RIF) casts serious doubt on NXP's motivations, and that a reasonable jury could conclude that NXP's conduct in this regard was actually an attempt to conceal the true motivation for terminating Shah – illegal discrimination.

However, nothing about the Freeman-Key email chain supports the proposition that NXP's proffered reason for terminating Shah's employment was false and that discrimination was the real reason. Importantly, neither Key nor Freeman referred to Shah's or Knoell's age or national origin, nor to any desire to eliminate older employees or those of Indian descent, nor to any desire to hire younger, white employees. Additionally, Shah does not argue that he was more qualified than the other FQEs and could not identify any of his co-workers who, in his opinion, should have been terminated instead of him. Moreover, considering the facts in the light most favorable to Shah, the email chain does not, on its face, contradict NXP's purported reason for termination.

### 2. Shifting Justifications[11]

---

[11] Shah's contention that NXP changed its justification for termination is not properly before the court, because the issue was first raised in Shah's motion for reconsideration. Accordingly, Shah has waived this argument. *See infra* Section III.D. Nevertheless, as explained herein, even if this issue were properly before the court, it would still fail.

Next, Shah argues that NXP's stated justification for terminating him changed during the course of this litigation, which is evidence that the RIF was for discriminatory reasons. "Shifting justifications [for a plaintiff's termination] calls the credibility of those justifications into question. By showing that [a] defendants' justification for firing [a plaintiff] changed . . . a genuine issue of fact [is created] that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination." *Cicero v. Borg-Warner Auto. Inc.*, 280 F.3d 579, 592 (6th Cir. 2002).[12] Shah was originally informed (pre-litigation, at his termination meeting) that he was being terminated through an RIF due to an "economic downturn;"[13] however, NXP's headcount remained the same and its expenditures actually increased after the reorganization/RIF. After the litigation ensued, Shah maintains that NXP changed its justification for conducting the alleged reorganization/RIF, stating that the RIF was the result of a desire to have one "Quality Manager" overseeing the various "Quality Engineers" – essentially a "centralized leadership" justification.

However, the evidence indicates that NXP never changed its justification. Shah testified:

---

[12] In *Cicero*, the defendant acquired a division of the plaintiff's former employer, of which the plaintiff was a management team member. *Id.* at 583. The defendant initially claimed that it terminated the plaintiff's employment because it wanted to put into place its own management team. *Id.* at 592. During discovery, however, the defendant asserted for the first time that it terminated the plaintiff for poor performance. *Id.* The defendant changed its justification yet again at summary judgment, claiming that it had only fired members of management who dealt directly with its headquarters in Chicago. *Id.* The court found these shifting justifications sufficient to create a genuine issue of material fact as to whether the defendant's proffered reason for the plaintiff's termination truly motivated its actions. *Id.* Unlike *Cicero*, where the defendant's shifting justifications were wholly unrelated to one another and did not stem from one central fact, no similar facts exist here.

[13] Roberts informed Shah that the termination "was due to the economic downturn and the resultant . . . misfortunes of companies like NXP, reductions in sales volume, et cetera, et cetera."

> Q. Did either Ken [Roberts] or Leland [Key] say why it was your
> particular position that should be eliminated?
>
> A. It was reorganization and work force reduction.

Therefore, Shah knew at the time of his termination that the decision was based on a reorganization and corresponding RIF.

In sum, the record evidence shows that: (1) in mid-2008, Knoell emerged as the leading candidate to take over Michaels's higher-ranking job as Quality Manager for all of North America, not just as a manager for the Automotive FQEs;[14] (2) Key created the Automotive Quality Manager position in 2009 to fill the supervisory void in the Quality sub-group resulting from Michaels' retirement and the subsequent hiring freeze; (3) Key believed that hiring Knoell would be an upgrade to the Automotive Americas group and communicated that point contemporaneously to many of his colleagues, all of whom concurred with his proposal when Knoell unexpectedly was laid off by Visteon[15]; (4) NXP required that Key not increase his headcount in the Automotive Americas group,

---

[14] It is notable that Knoell and Shah had previously worked together at Visteon prior to Shah's employment with NXP. They both started as engineers, but Visteon promoted Knoell in 1997 to Technical Specialist, a job with a Leadership Level job grade of LL6, which was an entry-level supervisory position. Knoell continued working as a Technical Specialist for the next 12 years. Shah also continued to work for Visteon, but in a non-supervisory job at a lower rate of pay. Additionally, unlike Shah, Knoell was one of the four founders of the Automotive Electronics Council ("AEC"). The AEC "was originally established by Chrysler, Ford, and GM for the purpose of establishing common part-qualification and quality-system standards." *See* http://www.aecouncil.com (last visited July 31, 2012). Unlike Shah, Key considered Knoell to be an expert in semiconductor reliability based on his work for the AEC.

[15] Key believed that the Automotive Quality Manager position would produce certain efficiencies, such as having a centralized reporting structure for the FQEs. He also envisioned that the Automotive Quality Manager would be able to "identify and centralize recommended 'best practices' for FQE's on quality issues and take steps to ensure that those best practices would be

so Key could not hire Knoell without terminating someone else in the group; (5) Shah admitted that all the Automotive FQEs were performing satisfactorily at the time of his termination; (6) Shah had the least seniority;[16] (7) Knoell performs management duties that differ from Shah's former duties; and (8) Shah could not identify any other FQE who was not performing satisfactorily or who, in his mind, should have been terminated instead of him.

Based on this evidence, the district court concluded that:

[T]he two reasons given by Defendant in support of the reduction in force are not inconsistent. Defendant wanted to hire Knoell in order to upgrade [its] organization (i.e. provide . . . regional leadership) . . . but for economic reasons, could not do so without terminating an existing employee . . . Thus the two rationales given by Defendant underlying the reduction in force (economic necessity and improving its management structure) are intertwined: due to economic considerations, Defendant could not improve its management structure in the desired manner without terminating Plaintiff.

Accordingly, Shah's argument that NXP's shifting justification developed out of a need to defend its conduct is not supported by the record. Conversely, the record indicates that the two reasons given by NXP in support of the RIF are not inconsistent.

Therefore, Shah failed to produce evidence that NXP's reason for termination was a pretext for discrimination. The evidence supports a finding that Key simply exercised his business judgment to seize upon the opportunity to hire Knoell into a new management position, which in turn required Key to eliminate a position elsewhere within NXP.

---

implemented by all the FQEs as a group." Key considered whether any of the existing FQEs could fill the manager role, but determined that none of them exhibited the necessary leadership skills.

[16] It is notable that in many circumstances, seniority would in fact give preference to individuals in the protected age group.

####        D.        Motion for Reconsideration

Finally, Shah maintains that the district court erred when it denied his motion for reconsideration.

It is well-settled that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g.*, 477 F.3d 383, 395 (6th Cir. 2007). Additionally, reconsideration motions cannot be used as "an opportunity to re-argue a case." Furthermore, a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier. *See, e.g., Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003); *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. Appx. 817, 824 (6th Cir. 2008) (affirming denial of reconsideration and stressing: "It is hard to imagine how an affidavit from one of [plaintiff's] own witnesses would have been previously unavailable to [plaintiff], and [plaintiff] has not explained why it failed to introduce this evidence in opposition to summary judgment."). Shah's motion suffers from the exact same deficiencies discussed in these cases.

Specifically, Shah's motion for reconsideration cited new excerpts from Knoell's deposition and a new declaration that Shah signed 12 days after the district court granted summary judgment for NXP. On appeal, the only alleged error Shah assigned to the district court on reconsideration was striking his declaration.[17] As in *Sommer*, there is nothing in Shah's declaration that was not within his personal knowledge in June 2010 when he filed his opposition to NXP's motion for summary

---

[17] In the declaration, Shah attested that he spent 80 to 90 percent of his time servicing the three accounts that Knoell eventually took over.

judgment, and Shah offers no explanation as to why he failed to present his declaration in a timely fashion.[18] "By bringing the issue [of severability] before the District Court in such an untimely fashion, defendants effectively waived their argument on severability and have no basis to assign failure to sever as an error on this appeal." *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984). Moreover, even if we did consider the declaration, it would not change the outcome. In the declaration Shah asserts that the three customer accounts – Bosch, Bose, and TRW -- that Knoell took over after Shah's termination allegedly consumed 80-90 percent of Shah's time while he was employed by NXP. However, the pertinent evidentiary inquiry is not simply how the plaintiff spent his or her time, but rather the duties of the person who allegedly replaced the plaintiff, such that an employee who performs duties in addition to duties that the plaintiff performed is not a replacement. *Geiger*, 579 F.3d at 623. The relevant inquiry, as expressed by the district court, is "how Knoell spends his time, not how [Shah] spent his time."

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for NXP Semiconductors USA, Inc.

---

[18] "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Case No. 11-1779
*Shah v. NXP Semiconductors USA, Inc.*

**HELENE N. WHITE, Circuit Judge,** concurring in part and dissenting in part. I join the

majority in affirming the dismissal of Shah's national-origin discrimination claim.

As to the age-discrimination claim, I respectfully dissent. I conclude that Shah presented

sufficient evidence from which a reasonable jury could conclude that NXP's purported reduction in

force (RIF) was not bona fide,[1] and that the district court thus erred in applying the heightened *prima*

*facie* standard applicable in RIF cases. Soon after Bob Knoell informed Key that Visteon had let him

go, Key emailed Freeman that it "would be good to get Bob on the team." Freeman responded the

same day, "Could you hire him and fire Girish [Shah]?" Key immediately responded, "You read my

mind .. . as you know difficult to fire quickly here, need to build a case etc. My thought is to

eliminate the quality engineer role (Girish's position), and hire Bob as a regional automotive quality

mgr, (where he would also handle Girish's accounts directly), so we could then RIF Girish, rather

than fire him." A reasonable jury could infer from these communications that 1) the decision to

"RIF" Shah was not based on an economic downturn, contrary to what NXP told Shah, and 2) NXP

management sought the cover of NXP's RIF policy because either it was easier to discharge an

employee under an RIF than to "build a case" against an employee, and/or NXP management

believed that a termination labeled as pursuant to an RIF would fend off litigation. A reasonable jury

---

[1]Even if a jury were to conclude that there was a bona fide RIF, Key did not follow NXP's RIF policy as the district court concluded. It is undisputed that Key did not review the performance evaluations, productivity or qualifications of the FQEs before selecting Shah for termination. The NXP RIF policy provides that employees are selected based on a combination of factors, including job function, presence or absence of critical skills, past performance and productivity, qualification, attendance/punctuality, and corrective action status.

-25-

could also conclude that there simply was no RIF; after all, the headcount in Key's department did not decrease.

Even if Knoell did not replace Shah, under the traditional *McDonnell Douglas* burden-shifting analysis, Shah established a *prima facie* case of age discrimination by showing membership in a protected class, an adverse employment action, that he was qualified for the position, and that a similarly situated younger employee (Laituri) was not subject to the same adverse employment action. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (applying *McDonnell Douglas* burden-shifting framework in ADEA case). Regarding pretext, as discussed, Shah presented evidence from which a reasonable jury could conclude that the purported RIF was not bona fide or that there was no RIF at all, or both. Thus, Shah satisfied his burden to produce sufficient evidence from which a jury could reasonably reject his employer's explanation for firing him. *Blizzard v. Marion Technical Coll.*, 689 F.3d 275, 285 (6th Cir. 2012). "[P]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.*, quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Whether Shah can meet his burden under the ADEA to show that age was the but-for cause of NXP's adverse action is an open question. *See Blizzard*, 689 F.3d at 283. Nonetheless, viewing the facts in a light most favorable to Shah, NXP was not entitled to summary judgment.

Finally, I conclude that Shah's claim under Michigan's Civil Rights Act, Mich. Comp. Laws § 37.2010 *et seq.*, was also improperly dismissed, as the *McDonnell Douglas* burden-shifting framework applies and, unlike the ADEA, a plaintiff need show only that age was *a motivating* factor in the adverse employment action. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 522 (Mich.

2001) (once the employer articulates a legitimate, nondiscriminatory reason for its adverse employment action, "in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence . . . , when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action") (internal quotations and citation omitted).