NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0303n.06

Case No. 16-3463

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jun 01, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| LUBRIZOL CORPORATION, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| Defendant-Third Party Plaintiff-Appellant, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | **OPINION** |
| UNITED STATES FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Both Arrowood Indemnity Company and United States Fire Insurance Company ("USF") insure The Lubrizol Corporation, a chemical manufacturer. In 2002, the Environmental Protection Agency ("EPA") notified Lubrizol of the potential for liability at the EPA-designated Patrick Bayou Site, which lies adjacent to Lubrizol's Deer Park Facility. Lubrizol did not file any claims with Arrowood or USF arising out of the EPA's investigation until 2009. In 2010, Arrowood filed this suit seeking a declaratory judgment that, pursuant to a 1994 settlement agreement between Lubrizol and Arrowood's predecessor-in-interest, it had no obligation to defend or indemnify Lubrizol with respect to the

EPA's investigation. Lubrizol joined USF as a third party defendant, requesting a declaratory judgment that USF is obligated to defend and indemnify Lubrizol pursuant to an insurance policy.

On cross-motions for summary judgment, the district court found that the 1994 agreement unambiguously released Arrowood from any liability at the Patrick Bayou Site arising out of Lubrizol's activities at its Deer Park Facility. The district court also granted partial summary judgment to USF based on its similar 1995 release agreement with Lubrizol. Lubrizol proceeded to trial against Arrowood for handling its claims in bad faith, and a jury found for Lubrizol.

Lubrizol appeals the grant of partial summary judgment, arguing that the Patrick Bayou Site is not covered by the settlement agreements, and therefore Arrowood and USF are liable to defend and indemnify Lubrizol against the EPA. For the reasons that follow, we affirm the decision of the district court.

I.

The Lubrizol Corporation manufactures specialty chemicals at its facility in Deer Park, Texas. Arrowood Indemnity Company is the successor-in-interest to an insurer that issued a primary general-liability policy to Lubrizol. USF issued umbrella insurance policies to Lubrizol. Underlying this litigation are two settlement agreements entered into by Lubrizol—the first with Arrowood, the second with USF. The parties agree that our interpretation of these agreements is dispositive in this appeal.

In 1994, Lubrizol brought a declaratory judgment action against Arrowood's predecessor-in-interest[1] to resolve the scope of the insurer's duties. The parties entered into a settlement agreement, which provided:

> . . . Lubrizol hereby irrevocably and unconditionally releases all claims that Lubrizol has or could have arrested against [Arrowood] under the Insurance Policies in connection with:
>
> (a) liability, expenses, and losses arising out of claims, proceedings and actions made, or which may in the future be made, asserted or filed against Lubrizol by the United States Environmental Protection Agency, other federal, state, local or other environmental agencies and private parties for environmental liabilities including bodily injury and property damage liabilities, arising out of Lubrizol's alleged acts or omissions as a generator, disposer, owner/operator or transporter of alleged hazardous substances, including, without limitation, environmental claims as those more fully described in the lawsuit;
>
> (b) the cost of defending any and all claims of liability specified in the preceding clause . . . .

This agreement applied to claims arising out of a list of "Subject Sites" attached to the agreement as Exhibit B. Listed among the Subject Sites was "Lubrizol's Deer Park Facility[,] Deer Park, TX."

Similarly, in 1995 Lubrizol sought a declaratory judgment against USF to resolve USF's duties to defend and indemnify Lubrizol under numerous insurance policies. The settlement agreement between Lubrizol and USF "extinguish[ed] any and all obligations that U.S. Fire has or may have to Lubrizol under the Policies in connection with Environmental Claims arising from the Subject Sites . . . ." It stated:

> Lubrizol hereby fully releases and forever discharges U.S. Fire of and from any and all claims, duties, rights, actions, causes of action, liabilities, obligations and demands of every kind and nature, whether known or unknown, whether past, present or future, whether asserted or unasserted, whether at law or in equity, that Lubrizol has ever had, now has, or may have in the future, for damages and costs of any kind . . . in connection with

---

[1] We refer to Arrowood as the party to this agreement with Lubrizol instead of Arrowood's predecessor in interest.

> Environmental Claims from the Subject Sites . . . . It is expressly agreed and understood by and between the parties that, should any future obligation arise or be alleged to arise in connection with the Policies with respect to Environmental Claims arising from the Subject Sites . . . , Lubrizol will not assert that those obligations must be met by U.S. Fire, because this agreement is full, complete, and final.

The agreement defined "Environmental Claims" as "any and all past, present, and future Claims arising from Lubrizol's involvement at the Subject Sites involving, without limitation, actual, alleged, threatened . . . damage to natural resources" as well as "any and all past, present and future claims to recover costs . . . incurred and sums expended . . . for investigation, removal, monitoring, treatment, disposal or containment of contaminants or pollutants of any kind . . . ." The "Lubrizol Deer Park Facility" is listed as a Subject Site.[2]

In October 2002, the EPA sent Lubrizol a General Notice Letter, notifying Lubrizol of the potential for liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606(a) and 9607(a), at the EPA's Patrick Bayou Site, a three-mile long tidal bayou located in Deer Park, Texas. The Site sits adjacent to many industrial plants, including the Lubrizol Deer Park Facility, as well as the surrounding wetlands and bodies of water that receive discharge from that facility. The letter explained that Lubrizol may be a responsible party for the "release or threatened releases of hazardous substances, pollutants, or contaminants at the Site."

Lubrizol notified Arrowood of the letter in December 2002. Arrowood acknowledged receipt of the letter and informed Lubrizol that it would investigate the claim under a full reservation of rights.

---

[2] Although the Arrowood and USF releases are similar, they are not identical. The Arrowood agreement releases "all claims . . . made, or which may in the future be made, asserted or filed against Lubrizol by the [EPA or other governmental agencies]." The USF agreement releases "any and all claims . . . of every kind and nature, whether known or unknown, whether past, present or future, whether asserted or unasserted, . . . that Lubrizol has ever had, now has, or may have in the future, for damages and costs of any kind" but further clarifies the parties' assumption of risk that future claims will be covered by the release.

4

In January 2006, Lubrizol and other responsible parties entered into an Administrative Order on Consent ("AOC") with the EPA to conduct a Remedial Investigation/Feasibility Study ("RI/FS") of the Patrick Bayou Site. In the AOC, Lubrizol admitted it was a "responsible party" under CERCLA. Lubrizol estimates approximately $2.9 million in CERCLA liability at Patrick Bayou. Arrowood learned of the AOC in early 2008, when it followed up with Lubrizol on the status of the investigation. Lubrizol did not request indemnification or assistance at that time.

In February 2009, Lubrizol made its first request that Arrowood provide coverage related to the RI/FS at the Patrick Bayou Site. Arrowood responded, requesting further information about the AOC, and again reserving its rights. Lubrizol provided additional information about the AOC in April 2009.

Arrowood filed this suit in December 2010, seeking a declaratory judgment that it did not have to defend or indemnify Lubrizol for CERCLA liability at the Patrick Bayou Site. Lubrizol filed counter-claims for breach of contract and bad-faith claim handling and sought a declaratory judgment that Arrowood was liable to defend and indemnify Lubrizol for liability at the Patrick Bayou Site. Lubrizol also filed a third-party complaint for a similar declaratory judgment against USF. Lubrizol moved for partial summary judgment on the issue of Arrowood's duty to defend Lubrizol with respect to the Patrick Bayou Site. Arrowood and USF also moved for partial summary judgment, asserting that they had no such obligations under the 1994 and 1995 settlement agreements.

The district court granted partial summary judgment in favor of Arrowood and USF. The court found that the agreements unambiguously released the insurers from their obligations to Lubrizol for Patrick Bayou Site liability. The court relied on the agreement language that released Arrowood and USF from any and all claims "arising out of" and "arising from" the

Subject Sites. The parties did not dispute that the contamination at the Patrick Bayou Site was a result of Lubrizol's activity at its Deer Park Facility. It is also undisputed that the "Deer Park Facility" is included as a Subject Site in the 1994 and 1995 agreements. Because Lubrizol released Arrowood and USF from any claims arising from the Deer Park Facility, the court dismissed Lubrizol's claims for defense and indemnification at the Patrick Bayou Site.

The district court denied Lubrizol's motion to reconsider pursuant to Fed. R. Civ. P. 56(d). It held that Lubrizol's additional evidence was immaterial extrinsic evidence because the 1994 and 1995 agreements unambiguously released any right to coverage.

Lubrizol proceeded to trial against Arrowood for handling its claims in bad faith. A jury found for Lubrizol and awarded compensatory and punitive damages. The court entered final judgment on March 31, 2016. Lubrizol now appeals the district court's grant of partial summary judgment in favor of Arrowood and USF.

II.

We review a district court's grant of summary judgment *de novo*. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 866 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). We construe all reasonable inferences in favor of the nonmoving party. *Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 818 (6th Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A.

The parties agree that Ohio law governs any dispute regarding the terms of the settlement agreements. A settlement agreement is a contract and its terms are construed according to the "usual method[s] of contract construction." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004). The primary objective of contract interpretation is to determine the intent of the parties at the time of contracting. *Id.* (citation omitted); *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). We look first to the plain, ordinary meaning of the contractual language in order to determine the parties' intent. *Galatis*, 797 N.E.2d at 1261. If the language is clear, we "may look no further than the writing itself to find the intent of the parties." *Id.* We consider extrinsic evidence to determine the parties' intent only if a contract is ambiguous. *Id.* A contract is ambiguous where a provision at issue is susceptible to more than one reasonable interpretation. *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014).

Lubrizol "irrevocably and unconditionally" released Arrowood from paying on all EPA claims that is "has or could have asserted" for "environmental liabilities" that arise out of Lubrizol's activity as a "generator, disposer, owner/operator or transporter" of "hazardous substances" at the Deer Park Facility. This extended to claims "made" as well as those "which may in the future be made."

The dispositive question is whether the Patrick Bayou Site contamination "arises out of" Lubrizol's activities at the adjacent Deer Park Facility. In its AOC with the EPA, Lubrizol acknowledges that it owns and operates a facility "which released hazardous substances or arranged for the disposal or treatment of hazardous substances at the [Patrick Bayou] Site." The Deer Park Facility lies adjacent to the Patrick Bayou waterway, and contaminants flowed into the

Site from the Deer Park Facility. Thus, we find it reasonable to conclude that Patrick Bayou Site contamination arises out of Lubrizol's conduct at Deer Park.

Lubrizol argues that its claim should survive summary judgment because there is another reasonable interpretation of the settlement agreement. It asserts that the agreement reserves Lubrizol's rights to any claims not arising out of the Exhibit B Subject Sites and that because Patrick Bayou is not listed as a Subject Site, its claims related to Patrick Bayou were reserved. This interpretation, however, limits the 1994 agreement to contamination *at* the Subject Sites, effectively deleting the phrase "arising out of" from the agreement. The parties agreed to release any claims that resulted from Lubrizol's activities at a list of sites. They did not agree to limit claims to only those *at* the Subject Sites. Instead, they specifically selected the language "arising out of" for the release. The reservation of rights clause that Lubrizol cites echoes the "arising out of" phrase used in the release—the parties reserved "all claims *arising from* sites not listed on Exhibit B." Lubrizol's interpretation contorts the intent of the parties and attempts to create an ambiguity out of clear and unequivocal language. We decline to adopt it as a reasonable interpretation.

Lubrizol also argues that because eight of the fourteen Subject Sites could be described as "arising out of" the Deer Park Facility, interpreting the agreement as a release of any claim "arising out of" Deer Park makes the inclusion of those additional sites unnecessary. Lubrizol fails to recognize the likely reason those sites were listed out in Exhibit B: the agreement includes an expansive release of rights. Given the fact that contamination at one Subject Site might arise out of activity at the Deer Park Facility, it is equally likely that contamination may arise out of the other Subject Sites and contaminate a third location. The Exhibit B list of Subject Sites thus echoes the expansive language of the agreement.

Finally, we decline to adopt Lubrizol's argument that because the Patrick Bayou claim did not exist in 1994, it could not be extinguished through the settlement agreement. The plain language of the release explicitly includes future claims. There is no reason to contort the clear language releasing "claims . . . which may in the future be made"—the intent of the parties is clear. Lubrizol and Arrowood contemplated future liability in their agreement and Arrowood was released from future claims.

For these reasons, we conclude that under the plain language of the agreement, Arrowood is not responsible to Lubrizol for any potential liability or expenses from the EPA Patrick Bayou action.

B.

Lubrizol's 1995 settlement agreement with USF contains a similar release of coverage for any claims "arising from" Lubrizol's action or inaction at a list of Subject Sites, including the Deer Park Facility. Lubrizol again argues that the settlement agreement does not apply to the Patrick Bayou claim because "Patrick Bayou" is not listed as a Subject Site. But contamination does not have to occur *at* the Deer Park Facility—it just has to arise from it to be covered under the agreement. To adopt the narrow interpretation offered by Lubrizol would be to circumvent the intent of the parties and twist the contractual language to mean something other than its plain meaning.

Additionally, the USF settlement agreement supports an even stronger conclusion that future claims were included in the release. The agreement states:

> It is expressly agreed and understood . . . between the parties that, should any future obligation arise or be alleged to arise in connection with the Policies with respect to Environmental Claims arising from the Subject Sites . . . , Lubrizol will not assert that those obligations must be met by U.S. Fire, because this agreement is full, complete, and final.

9

It further defines "environmental claims" covered by the agreement to specifically include "any and all past, present, and future Claims arising from Lubrizol's involvement at the Subject Sites." This language unequivocally releases USF from future liability.

Accordingly, we find that USF has been released from any obligation to cover Lubrizol's liability or expenses relating to the disputed EPA claim. And because the agreement is unambiguous, extrinsic evidence is not necessary. This makes Lubrizol's Rule 56(d) motion to extend discovery futile. No additional discovery is required with respect to the terms of the agreement.

C.

Although the language in the Arrowood and USF settlement agreements is not identical, we do not read the two agreements to require different outcomes. The Arrowood agreement releases "all claims . . . made, or which may in the future be made, asserted or filed against Lubrizol by the [EPA or other governmental agencies]." The USF agreement goes further. It (1) releases USF "of and from any and all claims . . . of every kind and nature, whether known or unknown, whether past, present or future, whether asserted or unasserted, . . . that Lubrizol has ever had, now has, or may have in the future, for damages and costs of any kind"; (2) contains an express assumption of risk by Lubrizol that claims released by the agreement could be unknown and that future claims would be covered; and (3) includes, in its definition of "Environmental Claims," specific language about future claims.

The additional clarity in the USF agreement, however, does not weaken the impact of the release language in the Arrowood agreement with respect to future claims. As discussed in Part II.A. *supra*, the language "all claims . . . which may in the future be made" is sufficient to

effectuate a broad release of all future claims. Therefore, we find that both agreements unequivocally released the insurers from liability.

## D.

Because the language in the agreements was clear and unambiguous, we need not consider extrinsic evidence. *See Galatis*, 797 N.E.2d at 1261. Furthermore, the extrinsic evidence offered by Lubrizol against Arrowood relates to interpretations of the agreement many years after it had been signed. The evidence does not cast into doubt what the parties intended at the time they signed the settlement agreement.

## III.

We review a district court's decision not to consider extrinsic evidence presented for the first time on a motion for reconsideration for an abuse of discretion. *Shah v. NXP Seminconductors USA*, 507 F. App'x 483, 487 (6th Cir. 2012) (citing *Huff v. Metro. Life Ins. Co.*, 675 F.3d 119, 123 (6th Cir. 1982)).

## A.

Lubrizol argues that the district court abused its discretion when it denied a motion for reconsideration offering "new evidence" of the settlement agreement language. Motions for reconsideration are not to be used as "an opportunity to re-argue a case" or to "introduce evidence for the first time . . . where that evidence could have been presented earlier." *Id.* at 495. In order for Lubrizol to succeed, it must show that the district court committed a "clear error of judgment" that rendered its decision "arbitrary, unjustifiable, or clearly unreasonable." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014). It cannot do so here.

The 1994 Settlement Agreement is facially unambiguous making extrinsic evidence unnecessary and even if needed, the evidence Lubrizol attempted to admit is improper to discern

the intent of the parties. For example, Lubrizol offers a November 4, 1993 lettered authored by Lubrizol discussing the agreement. The 1994 agreement does not incorporate the November 4, 1993 letter, does not allude to it in any way, and there is not strong evidence that the letter even supports the reading Lubrizol suggests Therefore, the district court did not abuse its discretion in refusing to consider this as well as other evidence.

## B.

The district court also did not abuse its discretion when it refused to consider evidence presented for the first time on a motion for reconsideration regarding waiver, laches, and unclean hands. Lubrizol initially raised these defenses in its answer, but then abandoned them by filing for partial summary judgment without requesting further discovery on these issues. Now, Lubrizol attempts to argue that it did not have enough evidence at the time to raise these defenses. Lubrizol, however, "is not entitled to reserve particular issues and arguments until after a court rules against it." *Longs v. Wyeth*, 621 F. Supp. 2d 504, 512 (N.D. Ohio 2009), *aff'd in part, rev'd in part on other grounds*, *Wimbush v. Wyeth*, 619 F.3d 632 (6th Cir. 2010). The district court was thus well within its discretion to deny these defenses in deciding the motion for reconsideration.

## IV.

For the reasons stated above, we affirm the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.** I concur with the majority opinion with respect to the settlement agreement between The Lubrizol Corporation ("Lubrizol") and United States Fire Insurance Company ("USF"). However, I respectfully dissent from the majority opinion with respect to the settlement agreement between Lubrizol and Orion, Arrowood Indemnity Company's predecessor in interest.

The root of my dissent is the difference between the two agreements. The Lubrizol-USF agreement is expansive and clear. It unambiguously releases USF from all claims "whether known or unknown, whether past, present or future, whether asserted or unasserted, . . . that Lubrizol has ever had, now has, or may have in the future . . . in connection with Environmental Claims arising from the Subject Sites." R. 50-2 (Lubrizol-USF Settlement Agreement § 4.2) (Page ID #1567–68).

By contrast, The Lubrizol-Orion agreement is not so clear. In that November 21, 1994 agreement, Lubrizol released "all claims that Lubrizol has or could have asserted against Orion . . . in connection with . . . claims . . . which may in the future be made . . . against Lubrizol by the United States Environmental Protection Agency . . . for environmental liabilities . . . arising out of Lubrizol's alleged acts or omissions as a generator . . . of alleged hazardous substances." R. 47-11 (Lubrizol-Orion Settlement Agreement at 2) (Page ID #1442). Had Lubrizol and Orion not included the first clause of this release, their agreement would be essentially the same as the Lubrizol-USF agreement. That hypothetical agreement would read, "Lubrizol releases all claims which may in the future be made against Lubrizol by the United States Environmental Protection Agency for environmental liabilities arising out of Lubrizol's alleged acts or omissions as a generator of alleged hazardous substances." Such a statement would clearly release future claims that the EPA may bring against Lubrizol.

13

However, this is not the agreement into which the parties entered. Instead, the parties confusingly added the first clause, which refers to "all claims that Lubrizol has or could have asserted against Orion." *Id.* The inclusion of this first clause renders the release as written logically impossible. A company does not presently *have* a claim against an insurer for a claim that the EPA *may make* in the future. Nor *could* a company presently assert a claim against an insurer for a claim that the EPA *may make* in the future. All the same, Lubrizol *could not have had* and *could not have asserted* a claim against Orion on November 21, 1994 for a claim that the EPA *might make* against Lubrizol after that date. "When this kind of absurdity exists, the court should engage in fact-finding to give the contract the most sensible and reasonable interpretation." *Laboy v. Grange Indem. Ins. Co.*, No. 100116, 2014 WL 1408142, at *2 (Ohio Ct. App. Apr. 10, 2014) (citing *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411 (Ohio 1987)), *rev'd on other grounds*, 41 N.E.3d 1224 (Ohio 2015). Therefore, I would reverse the judgment with respect to the Lubrizol-Orion agreement and remand for further proceedings to determine whether the Lubrizol-Orion release applies to claims that the EPA brought after November 21, 1994. I would affirm the district court's judgment with respect to the Lubrizol-USF agreement.